The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. Please be seated. Court is in session. Okay, welcome. As you'll notice, we've got an unusual configuration today, but my two and so, but otherwise we'll proceed just as we would in the usual course. Thank you, Chief Judge Barron. At this time, today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 21-1338, United States v. Oscar Luis Mendoza-Flores. At this time, would Mr. Hernandez please introduce himself on the record to begin? H. Manuel Hernandez on behalf of Mr. Mendoza, court-appointed public counsel. Could you just hold on one second? I just want to make sure each of my colleagues can hear us. Well, Judge Howard, are you able to hear everything? Yes. Great. And Judge Lynch? I can hear everyone, but yes, I could not see you, Chief Judge Barron. I believe they have now remedied that. Okay, good. Well, I haven't changed much since you last saw me, so. Um, they showed an empty chair instead and that is totally unbecoming of our court. Okay, with that, go ahead. May it please the court, Your Honor? I would ask for two minutes reserved for rebuttal. You may. This is a, basically another one of the many cases that the court gets often from Puerto Rico, the District of Puerto Rico, of the in the public housing projects. Mr. Mendoza was charged along with 32 other defendants with six counts of indictment on conspiracy to distribute drugs, various substantive offenses of distributing heroin, crack cocaine, cocaine, marijuana, and firearms charge. He went to trial with one co-defendant and was convicted of all but one count involving possession with intent to distribute the crack cocaine. Ultimately, he was sentenced to 28 and a half years. I think we're pretty familiar with the procedure. If you want to just get to the legal arguments that you want to make to us today. Yes, Your Honor. The main issues that I've raised are basically a limitation of cross-examination and confrontation by the district court in two main areas. One, this involved Mr. Ramos Melendez, also known as Galdito, who was a, I would respectfully submit, the government's star witness or one of the star witnesses in this case. He was an informant. He was the son of the alleged leader of the drug trafficking organization who basically began cooperating. What was specifically the cross-examination that was denied? Because if I read the record, I'm just not quite grasping what it is you're saying that counsel wanted to ask on cross-examination that he was disallowed from asking. There were two areas that he tried to get into and was limited by the court. Limited how? I'm sorry? Limited how? What was the specific thing that was desired to be asked that the court said you may not ask? Well, one area was the previous murders, the Joshua Vidal Calero murders, where Mr. Galdito, I'll call him, the government's main witness that testified for 10 days, had lied to the prosecutors. What was it that counsel wanted to ask? Counsel, the government says that trial counsel actually told the court, I have one more question. The So you're not being very precise in answering the question that was put to you. As to that, where is there a request in the record for more examination? I believe that, as I recall the record, Your Honor, and it's in my brief, the defense counsel wanted to put in the actual statements that showed that Mr. Galdito, the informant, had lied about how many people were involved in this murder, that he was charged with ultimately, and how many times the victim had been shot. The court limited that. It did allow him some examination. But as I read the record, and again, you have to read it, and the court may disagree, the sense you get is that defense counsel gave up. He had intended to make this an important part, and it was an important part. I'm still just not quite hearing the this. The statements. The written statements that the defendants, I understand, lied to the state prosecutors in that murder case. He committed these murders while supposedly being a federal informant and working for the government. That was another issue. They didn't, you know, basically didn't have much control over him. And then these murders were committed. He lied to the state prosecutors, wound up somehow fixing that, no doubt with the assistance of government, and then gets 15 years probation for those murders. And he then cooperates and testifies at this trial. The second perjury, if I may proceed to the second area. You may, but I just think what I'm trying to understand, and I think what Judge Lynch is also asking you, the contention is not that the witness lied. The contention is that counsel for your client wanted to ask about something that the judge said you cannot. And we're trying to understand what is that thing with some precision so that we could then evaluate the actual statements and introduce the statements. He was not allowed to introduce the statements. And then based on my reading of the record, I read him as just basically giving up and moving on. I don't believe that's what you argue in your brief. You argue that he was stopped from questioning the witness further. Let's turn to your second prompt, which is the statement by the mother, which the court allowed examination about the witness's motive, which is what you were getting at. The mother's statement, as I understand it, was hearsay. You have not challenged the court's ruling that it was hearsay. So let's start with the assumption that it was hearsay. How then was it any error on the part of the court not to permit questioning about the mother's statement? You have to basically bifurcate what happened here. There is the mother's telling her in a jailhouse call, why did you lie? Why did you commit perjury? I don't believe that that would necessarily be hearsay. It may be a statement against interest. You have not challenged that on appeal. The government points that out in its brief. I did challenge without any doubt, Your Honor, the exclusion and the limitation of the cross-examination. There are two parts. There is the mother saying you lied, you committed perjury, why did you do it? You have to put that in context, because he said the reason he cooperated with the government to begin with, because his father had abused his mother and had abused him. That was one of the reasons he cooperated. That was his testimony at the trial. Then he testified about how his father was supposedly abused. His reaction to that is, what are you doing to me? You are killing me. I can the transcript, it is in the appendix beginning at page 82. The court allowed a full examination on that second topic, didn't it? I understood your appeal to be, it should have gone further than that and allowed introduction of the mother's statement, even though it was hearsay. I would respectfully disagree that the court allowed full examination. If you don't take the mother saying you lied. Okay, is your full examination contention dependent on the mother's statement? It provided context to what he then says, I'm doing what I have to do basically to help myself. I'm understanding the argument that you're saying that for the full understanding of what he was saying to be made, you had to hear what he was responding to. Is that the idea? Could you explain why that's so? Why would it be impossible to really understand what your client was saying without hearing what the mother had said that he was reacting to? Because if you don't have the context, I'm running out of time here, if you don't have the context of a mother saying you're lying, him saying I'm just trying to get myself out of this situation, there is no context. In which my father beat me. The testimony was, he said, my father repeatedly beat me. I had to get out of that situation. There was examination allowed on that. Your Honor, again, what situation, I don't know what your Honor is referring to. The situation was, his mother says, you lied in court, you committed perjury. The court did not allow defense counsel to go into that. Did allow to go into his statement, I'm just trying to get myself out of this situation. Without one, you don't understand the other. The jury could not have understood the significance. And just to help me before you conclude, just hum a few bars about how defense counsel would have used the mother's statement, not for the purpose of proving that he was lying, but for the purpose of giving context to his statement in a way that would have helped the defense escape. Your Honor, this is a defense lawyer's dream. Your own mother says you're a liar. Your own mother says you committed perjury. That's not context. That's just giving the jury the thought that an important person thinks he's lying. But if you're trying to say, to understand his statement, I needed the context of what he was reacting to. I'm trying to understand how the mother's statement would have enabled counsel not to just say, your mother thinks you're lying, but that, oh, what he was saying by saying that is now informed by what the mother's saying. And I don't understand that piece of argument. What he said was, and I'm quoting from the statement, I'm seeking my way out. That's what I'm looking for, my way out. After he tells her, you're trying to screw me, basically. You're trying to kill me by saying, I'm like, are you going to testify that I lied? It would be impossible for the jury to put that in context. The second part is meaningless without the first part. You have to have them together. The court limited it. So based on that, and it's denial of confrontation, constitutional error of first magnitude, I respectfully ask that the court reverse and remand for a new trial. Thank you very much. May it please the court, Thomas Klumper on behalf of the United States. If I may first address the Vidal issue, the murder issue in this case. First, there was no evidence because there was an innuendo by a brother of counsel about government, the U.S. federal, helping him maybe get a lower sentence. There's nothing on the record regarding that, that I recall. Now, in regard to the Vidal murder, in this case, if you look at pages basically from docket entry or day 17, 188.6, pages 68 to 77, that is where the crux of the matter occurred here. And here, in this case, defense counsel did not, even if I recall correctly, stated, I'm not going to introduce these statements. I just want to question him about it. And that's what his statement was. So when the reason why the court limited it was because already brother, the counsel, co-defendant's counsel, already had addressed the issue of whether two people were involved or three people were involved. And he even agreed, that's true, counsel, my co-defendant's counsel had already addressed it. So we already had about what they're complaining about, my understanding is, whether there were three people involved or one. And that's what he changed, the story in his statements. So, and in this case, that was brought out where he had changed it. I'm not, are you saying that he was restricted from asking some questions? No. That doesn't matter because he already had been able to get that information out? No, he was not. He wasn't restricted at all. All he stated was, I have one more question, and the court goes, go ahead, ask your one question. So he was not restricted at all. That is the government's contention. He was allowed to ask whatever questions he wanted. It was just that he said, I just have one more question, the court goes, then go ahead. And that's what happened. He asked one question regarding it, and then he moved on. And that's the government's contention. As for the second part, the impeachment, what he's arguing is regarding where there was a jailhouse phone call. And in that case, the government objected, and the court agreed it was hearsay, impermissible hearsay. I mean, what, even the, what the, he didn't object, first of all. So I think it's waived. It's government's position, it's waived. He never raised an objection during the trial regarding it. It was only actually that raised this argument. So first of all, it's waived. Secondly, our other contention is, it was already, the issue of this was brought out by defense counsel, the co-defendant's counsel already, and he knew it. And he asked no questions afterwards. When he had the opportunity to ask questions, he said no questions. So there we have, again, another waiver. So based on this, it's the government's position he was allowed to properly use the phone call when he was allowed to ask the questions regarding it, and especially with regard to finding and seeking his way out to show- Just to ask, co-defendant's counsel wanted to ask about the mother's statements and to get them in. That is correct. And that was disallowed, correct? That is correct. Regarding the lying, because he found it was hearsay. And here, co-defendant here, defense counsel did not go in with this argument or anything. The record reflects that. So based on our argument is, it was hearsay. It was inadmissible. Could you just address, I'm not sure I fully follow the argument, but the idea seems to be some notion of completeness, that in order to understand the defendant's statements in the conversation, you had to hear the statements of the interlocutor. So they wouldn't be admitted for their truth. They would be admitted just for the context of the response, and that he was prejudiced by not being able to show what he was responding to. No, I disagree. I respectfully disagree. In this case, court even gave an option saying, you can ask it, you should ask it. Then this way, you can ask questions regarding it, leading up to it. It just said, and he didn't do it in this And that is what he wanted, the bottom line. And that is what even co-defendant counsel was arguing. I want to bring out that, that he's seeking his way out, and that was what was brought out. So they understood, and they argued even in closing as impeachment, he was seeking his way out. So they were able to use it in this case. Any other questions? None from me. Thank you. At this time, would counsel for the appellant please reintroduce himself on the record to begin? You have a two-minute rebuttal. Thank you, H. Manuel Hernandez. May it please the court. Regarding the federal involvement after the murders, page 14 of the initial brief and page 27, there are numerous citations to the record there. It talks about the testimony of Sergeant Toro, who basically was the one who was his handler, and how he went to him after the murder. He was facing murder charges in exchange. In fact, he himself testified, it's on page 27 of the brief, where he basically testified that the feds came back to him and were seeking his further cooperation in exchange for their help with his murder charges, which he did, and ultimately wound up getting 15 years probation for murder. Again, the hearsay, again, I respectfully don't disagree that it was hearsay. There are exceptions to the hearsay rule. I quoted the statement against interest. There are, again, the state of mind, and then there's the residual exceptions to the hearsay. It has inherent indication in this year of being truthful. The court certainly has the discretion. This was a tough case. There was a lot of evidence. This man was facing a great deal of time. In fact, wound up getting 20 years in prison. I have to live with the record as it exists, and there's not much I can do with that. Perhaps defense counsel could have done a better job of articulating what his thoughts were and making his objections, but it is clear that he was limited. This was a critical witness for the government. Testified for 10 days. There was one third of this 30-day trial, and his own mother was saying, you're lying and you're committing perjury, and defense counsel was not allowed to fully examine on that issue. I respectfully request that the court reverse and remand for a new trial. Thank you very much. Thank you, counsel. That concludes argument in this case.